### WOODRUFF et al. v. HEISER.

No. 3052.

Circuit Court of Appeals, Tenth Circuit.

Aug. 11, 1945.

Rehearing Denied Sept. 4, 1945.

See also, 10 Cir., 150 F.2d 867.

Louis A. Fischl and Thos. W. Champion, both of Ardmore, Okl. (H. A. Ledbetter, of Ardmore, Okl., on the brief), for appellants.

Leonard J. Meyberg and Rupert B. Turnbull, both of Los Angeles, Cal. (T. G. Gibson, of Ardmore, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

This is an appeal from a judgment allowing a claim in bankruptcy. A brief statement of the background may be helpful in understanding the manner in which the questions for determination arise. In 1935, M. E. Heiser sued Leonard J. Woodruff and others in the United States Court for Southern California. It was alleged in the complaint that plaintiff had been and was engaged in the business of mining and marketing raw gems, particularly emeralds, sapphires, and zircons; that in 1928, he arrived in the United States from Australia on a business trip to find and establish a regular and ready market for raw gems, mined under his control and management in Australia; that he then owned and had in California certain sapphires, opals, zircons, and jade; that such gems were reasonably worth $164,000; and that the defendants cheated and defrauded him out of them. The defendant Woodruff failed to answer or otherwise plead in the case; plaintiff submitted evidence; and on March 20, 1939, the court entered judgment against such defendant for $164,000, together with accrued interest, aggregating $277,036.71. The defendant filed a motion to set aside the judgment. The motion was denied. The parties stipulated that the court might hear evidence respecting the value of the property of plaintiff for which damages were awarded in the judgment; and that should the court find the value to be less than the amount of the judgment, the judgment should be modified and reduced to the amount which represented the value of the property. On June 29, 1939, after hearing evidence, the court found the value of the property to be the amount fixed in the judgment.

Woodruff filed in the United States Court for Eastern Oklahoma his voluntary petition in bankruptcy; and, on July 5, 1939, an order of adjudication was entered. Heiser filed in the proceeding an unsecured claim, based upon the judgment. The referee entered an order authorizing any creditor of the estate to contest any claim filed. Willie Mae Woodruff, wife of the bankrupt, and Ida Belle Woodruff,

as creditors, filed objections to the claim of Heiser; and the bankrupt also filed objections. The referee authorized the trustee to employ an attorney in California and take such legal steps as seemed necessary and proper to vacate the judgment. The trustee and Woodruff filed in the cause in California a joint motion to vacate the judgment, vacate the default, vacate the orders entered after the rendition of the judgment, permit Woodruff to answer, and permit the trustee to intervene. The court denied the motion, Woodruff and the trustee appealed, and the order was affirmed. Jackson v. Heiser, 9 Cir., 111 F.2d 310. The referee later heard evidence and disallowed the claim in toto; on review, the district court entered judgment allowing it in full; and by order, the court authorized the objecting creditors to appeal from the judgment.

■ The action of the district court in allowing the claim was predicated upon the conclusion that the proceedings in California constituted res judicata of the matters set up in the objections. Section 2 of the Bankruptcy Act, as amended, 52 Stat. 840, 11 U.S.C.A. § 11, provides among other things that the district courts sitting in bankruptcy shall be vested with such jurisdiction in law and in equity as will enable them to exercise original jurisdiction in proceedings under the act; and that they may make such orders and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of the act. A court of bankruptcy is essentially a court of equity, and its proceedings are inherently proceedings in equity. It exercises equitable powers of wide sweep in relation to problems arising out of the administration of bankrupt estates; and, with appropriate regard for rights acquired under the law of the state, its equitable powers may be exerted in full vigor with respect to the allowance of claims, the rejection of claims, or the subordination of claims to other claims. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281; Prudence Realization Corporation v. Geist, 316 U.S. 89, 62 S.Ct. 978, 86 L.Ed. 1293.

■ A bankruptcy court in which an estate is being administered has full power to inquire into the validity of an alleged debt of the bankrupt upon which a claim against the estate is based. And the merger of the original debt or obligation

into judgment does not take away the power of the bankruptcy court to inquire into its provability. Notwithstanding the change in form of the liability from a simple contract debt, or an unliquidated claim, into a judgment of a court of record, it remains the same debt and the bankruptcy court may look behind the judgment to determine the essential nature of the liability for purposes of proof and allowance or rejection. Pepper v. Litton, supra. And in the absence of a well grounded plea of res judicata, the trustee in bankruptcy may collaterally attack a judgment which is presented as a claim against the estate on the ground that it was founded upon no real debt of the bankrupt. Pepper v. Litton, supra.

■ The claim of Heiser was contested on the grounds that no personal service of summons was had upon the defendant Woodruff in the action in California; that the complaint filed in the action failed to state a cause of action under the laws of California; that the complaint showed on its face that if plaintiff ever had any cause of action, it was barred by the statutes of limitation of California; and that the judgment was void for the reason that the complaint undertook to state three separate and distinct causes of action and the judgment failed to specify the cause upon which it was rendered. By the motion to vacate the judgment, set aside the default, vacate the orders entered after the rendition of the judgment, and permit the interposition of a defense to the action, the trustee and the defendant Woodruff expressly attacked the judgment on these grounds, and others. The trustee was acting for all of the creditors of the estate of the bankrupt, and the determination of such issues adverse to him constitutes res judicata here to that extent and protects the judgment against collateral attack on those grounds. Pepper v. Litton, supra.

■ But the grounds of contest did not end there. It was specifically charged in the objections that at the time of the filing of the suit in California and at the time of the rendition of the judgment, Woodruff was not indebted to Heiser in any amount; that the material allegations contained in the complaint were untrue; that the judgment was obtained through the use of perjured testimony given by Heiser; and that Heiser thus committed a fraud upon the court and the parties. The record fails to indicate that these matters were placed before the court in California, either in the motion of the defendant Woodruff to vacate the judgment, by the motion of the trustee and the defendant Woodruff to set aside the judgment, or otherwise. Therefore the judgment did not constitute res judicata in respect of these issues, and the claim was open to attack on these grounds. Pepper v. Litton, supra. In reaching this conclusion we are mindful of the statement in Jackson v. Heiser, supra, that the charge of fraud in obtaining the judgment was denied, not proved, and apparently abandoned. But the nature of the fraud referred to does not appear. And the record before us does not contain any showing that the contention that the material allegations in the complaint were knowingly false, that the judgment was secured through the use of perjured testimony given by Heiser, and that a fraud thus was committed on the court and the parties was ever submitted to the court in California by motion to vacate the judgment or otherwise, or that such issues were ever expressly adjudicated by that court in favor of Heiser.

■ The evidence concerning the claim was extensive and presented issues of fact. But the court did not make any formal findings of fact or conclusions of law. It was the duty of the court to make findings and conclusions, in accordance with Federal Rule of Civil Procedure 52(a), 28 U.S.C.A. following section 723c. And where the issues cannot be decided satisfactorily on appeal without findings of fact by the trial court, the judgment may be vacated and the cause remanded in order that findings of fact may be made. Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 60 S.Ct. 517, 84 L.Ed. 774; Kelley v. Everglades Drainage District, 319 U.S. 415, 63 S.Ct. 1141, 87 L.Ed. 1485. Where the trial court embodied in its written opinion specific findings on the material issues of fact and set out conclusions on the important questions of law involved, the cause should not be remanded for formal findings and conclusions. Carter Coal Co. v. Litz, 4 Cir., 140 F.2d 934. The court rendered an opinion in writing, but it does not present the findings or conclusions of the court upon the issues open to inquiry concerning the debt or obligation underlying the judgment. And the issues can not be satisfactorily decided on appeal without findings of fact.

The provision in the judgment allowing the claim of Heiser is vacated, and the cause is remanded for appropriate action in conformity with this opinion.

HUXMAN, Circuit Judge (dissenting).

I think the judgment of the lower court is right and should be affirmed on the ground that the issue presented is res judicata.

It is of course well settled that a bankruptcy court is not precluded from inquiring into the validity of a claim by the mere fact that it has been reduced to judgment, but when the validity of the judgment has been adjudicated since its entry, no good reason appears why a court of bankruptcy under its equitable powers should again relitigate the same issue.

The gist of the fraud with which Heiser was charged and which was made the basis of the attempt to defeat his claim in the bankruptcy court was that he panned off a bunch of worthless stones as jewels, and by the use of perjured and false testimony as to their value obtained a default judgment in the California court which now is the basis of his claim. This is the only fraud with which he has ever been charged. It is the basis of every effort of the Woodruffs or of the trustee to resist his claim.

In my view, this question of fraud in the procurement of the default judgment has been adjudicated twice since its entry. It was first adjudicated at the hearing on Woodruff's motion to set aside the default judgment, which was filed nine days after the entry thereof. While the record is not as clear on this point as might be desired, the charge must have been made at that time that the judgment was fraudulent because the gems had no value. This must have been so because while the court refused to set the default aside, it was stipulated in open court that the court should hold a hearing as to the value of the gems, and that the amount of the judgment should be modified if required in accordance with the evidence produced at such hearing. Pursuant to this stipulation a lengthy hearing was had in which both Woodruff and Heiser appeared and participated. At the end of that adversary hearing, the court found the value of the property to be the amount of the judgment, and accordingly refused to modify the judgment. So it appears that Woodruff got everything he would have gotten had his motion been sustained and had he been permitted to answer and defend.

Immediately after the court ruled against Woodruff, he went into bankruptcy, and this proceeding resulted. The order of the court refusing to modify the amount of the judgment was entered June 29, 1939. On July 5, 1939, Woodruff was adjudged a bankrupt on his voluntary petition in the United States District Court for the Eastern District of Oklahoma. Jackson was appointed trustee on July 20, 1939. On September 11, 1939, pursuant to authority theretofore obtained, he filed a notice of motion to vacate the default judgment in the United States District Court of California where the default judgment had been obtained. He also filed an affidavit of merit in support of his motion. The notice set forth many grounds in support thereof. Among others, it stated that the motion "will be made upon the ground that a fraud was practiced upon the above entitled court with respect to the entry of said judgment." The affidavit of merit by the trustee in support of the motion to set the judgment aside, among others, recited upon information and belief that the "judgment * * * is based upon fictitious values and was obtained by methods which amount to a constructive fraud * * * and in the event said judgment is set aside the alleged claim of said M. E. Heiser can be defeated in whole at a trial on the merits."

So here we have a direct attack upon the validity of the judgment on account of fraud in its procurement by the trustee himself. He failed in this attack in the California District Court. Why should he be permitted to raise the same question again a second time in the United States District Court of Oklahoma?

I cannot agree with the statement in the majority opinion that the issue of fraud in the procurement of the original judgment by the use of false and fraudulent testimony as to the value of the gems was not placed before the California court by the trustee's motion and supporting affidavit. The notice of motion alleged fraud and the affidavit stated that the judgment was based upon fictitious values and was obtained by methods that amounted to a constructive fraud. This could mean only one thing, namely, that the testimony as to the value of the gems was fictitious, false and fraudulent. Heiser's affidavits denied that

any fraud was practised upon the court. This presented a clear-cut issue of fraud in the procurement of the judgment. It was the duty of the trustee to substantiate the charge. This he failed to do.

Nor is it sufficient to say that the trustee was denied the opportunity to introduce oral testimony to support the charge. The record does not reveal that any oral testimony was offered or that the trustee was denied the right to introduce any testimony. But if he was denied this right, he should have raised the question when he appealed the case to the Circuit Court of Appeals.

Apparently the trustee abandoned the charge of fraud both in the California District Court and in the Circuit Court of Appeals. See Jackson v. Heiser, 9 Cir., 111 F.2d 310. But this he will not be permitted to do. One of the issues presented by both Woodruff and the trustee in their motions to vacate the judgment was fraud in the use of false and fictitious testimony relating to the value of the stones. The issue as tendered was broad enough to prove every kind and nature of fraud. It is incumbent upon one attacking the validity of a judgment to present every available ground of which he has knowledge. He may not present his claim by piece meal. Grubb v. Public Utility Comm., 281 U.S. 470, 478, 479, 50 S.Ct. 374, 74 L.Ed. 972. It is not claimed that the trustee was without knowledge of the claimed facts which would have enabled him to present the issue. He had the active help and assistance of Woodruff throughout in his efforts to vacate the judgment. Woodruff filed a motion with him to vacate this judgment.

The Circuit Court of Appeals of the Ninth Circuit treated the motion of the trustee as an independent action or proceeding attacking the judgment. The trustee tendered the issue of fraud in this proceeding and was defeated. He appealed, and abandoned the charge of fraud. A judgment is res judicata not only as to those matters which were decided, but also as to all matters which could have been presented for decision. Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 378, 60 S.Ct. 84, 84 L.Ed. 449. Two attacks have already been made upon this judgment since its entry on the ground there was no value to these stones and that the testimony establishing the

value was fraudulent, fictitious and perjured. I do not think that either the Woodruffs or the trustee is entitled to try the issue a third time.